# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

| | |
|---|---|
| TROY HINKLE, Individually and for Others Similarly Situated, | Case No. 4:20-cv-00022 |
| v. | Jury Trial Demanded |
| PHILLIPS 66 COMPANY. | FLSA Collective Action Pursuant to § 216(b) |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Troy Hinkle (Hinkle) brings this Fair Labor Standards Act (FLSA) lawsuit to recover the unpaid overtime wages and other damages owed to him by Phillips 66 Company (Phillips 66).

2.      Phillips 66 is one of the largest energy providers in the United States.

3.      Hinkle and the other Phillips 66 employees regularly work more than 40 hours in a week.

4.      But Phillips 66  does not pay them overtime for hours worked in excess of 40 hours in a single workweek.

5.      Instead of paying overtime, Hinkle received a daily rate with no overtime compensation.

### JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.      Venue is proper in this Court because Phillips 66 conducts substantial business in this District and Division.

8.      Hinkle performed work for Phillips 66 in Winkler County, Texas, which is in this District and Division.

9.     While working for Phillips 66, Hinkle lived in Ward County, Texas, which is located in this District and Division.

## THE PARTIES

10.     Hinkle worked for Phillips 66 from April 2019 until October 2019.

11.     Hinkle was a utility inspector for Phillips 66.

12.     Hinkle worked for Phillips 66 in and around Wink, Texas and Sonora, Texas.

13.     Throughout his employment with Phillips 66, Hinkle was paid a day-rate with no overtime compensation.

14.     Hinkle's consent to be a party plaintiff is attached as Exhibit A.

15.     Hinkle brings this action on behalf of himself and all other similarly situated workers who were paid by Phillips 66's day-rate scheme.

16.     Each of these workers were paid a flat amount for each day worked and Phillips 66 failed to pay them overtime for hours worked in excess of 40 hours in a workweek in accordance with the FLSA.

17.     The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors of Phillips 66 who were paid a day-rate with no overtime in the past 3 years (Putative Class Members).**

18.     The Putative Class Members are easily ascertainable from Phillips 66's business records.

19.     Phillips 66 may be served by serving their registered agent for service of process, Corporate Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 7th Street, Suite 620, Austin, Texas 78701.

## Coverage Under The FLSA

20.     At all times hereinafter mentioned, Phillips 66 has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21.     At all times hereinafter mentioned, Phillips 66 has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22.     At all times hereinafter mentioned, Phillips 66 has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $10,000,000.

23.     At all times hereinafter mentioned, Hinkle and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

24.     As will be shown through this litigation, Phillips 66 treated Hinkle the Putative Class Members as employees and uniformly dictated the pay practices Hinkle and its other employees were subjected to.

## Facts

25.     Phillips 66 is a global energy company.

26.     To provide its services, Phillips 66 hires inspectors (like Hinkle) to perform work.

27.     Many of these inspectors worked for Phillips 66 on a day-rate basis and make up the proposed Putative Class.

3

28.     These inspectors perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

29.     Because of Phillips 66's day-rate pay practice, Hinkle and the Putative Class Members are paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

30.     Because of Phillips 66's day-rate pay practice Hinkle and the Putative Class Members failed to receive overtime pay for hours that they worked in excess of 40 hours in a workweek.

31.     For example, throughout Hinkle's employment with Phillips 66, he was paid on a day-rate basis.

32.     Hinkle and the Putative Class Members normally worked 12 or more hours a day.

33.     Hinkle and the Putative Class Members would regularly work 7 days a week.

34.     Phillips 66 never guaranteed Hinkle and the Putative Class Members a salary.

35.     Phillips 66 never paid Hinkle or the Putative Class Members on a salary basis.

36.     Hinkle was required to report the days worked to Phillips 66.

37.     The work Hinkle performed was an essential and integral part of Phillips 66's core business.

38.     Phillips 66 directly determined Hinkle and the Putative Class Members' rates of pay and his work schedule.

39.     The Putative Class Members worked hours similar to Hinkle's.

40.     During Hinkle's employment with Phillips 66, it and/or the company Phillips 66 contracted with exercised control over all aspects of his job.

41.     Phillips 66 and/or the company it contracted with, controlled all the significant or meaningful aspects of the job duties performed by Hinkle and the Putative Class Members.

42.     Phillips 66 controlled all aspects of Hinkle's job duties by enforcing mandatory compliance with Phillips 66's policies and procedures.

43.     Phillips 66 directly determined Hinkle's rates of pay and his work schedule while he was working for Phillips 66.

44.     The Putative Class Members were denied overtime by the same illegal pay practice (Phillips 66's day-rate pay scheme) that resulted in Hinkle being denied overtime wages.

45.     Phillips 66's policy of failing to pay its employees, including Hinkle, overtime violates the FLSA because these workers are non-exempt.

46.     Phillips 66's day-rate scheme violates the FLSA because Hinkle and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

47.     As set forth herein, Phillips 66 has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

48.     Phillips 66 knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

49.     Phillips 66's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

50.     Accordingly, Hinkle and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

51.     Hinkle incorporates all previous paragraphs and alleges that the illegal pay practices Phillips 66 imposed on Hinkle were likewise imposed on the Putative Class Members.

52.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

53.     Numerous other individuals who worked with Hinkle indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

54.     Based on his experiences and tenure with Phillips 66, Hinkle is aware that Phillips 66's illegal practices were imposed on the Putative Class Members.

55.     The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

56.     Phillips 66's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

57.     Hinkle's experiences are therefore typical of the experiences of the Putative Class Members.

58.     The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

59.     Hinkle has no interests contrary to, or in conflict with, the Putative Class Members.

60.     Like each Putative Class Member, Hinkle has an interest in obtaining the unpaid overtime wages owed to him under the FLSA.

61.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

6

62.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Phillips 66 will reap the unjust benefits of violating the FLSA.

63.     Furthermore, even if some of the Putative Class Members could afford individual litigation against Phillips 66, it would be unduly burdensome to the judicial system.

64.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

65.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.     Whether Phillips 66 employed the Putative Class Members within the meaning of the FLSA;

b.     Whether Phillips 66's day rate pay scheme meets the salary-basis test;

c.     Whether Phillips 66's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

d.     Whether Phillips 66's violation of the FLSA was willful; and

e.     Whether Phillips 66's illegal pay practices were applied uniformly to all Putative Class Members.

66.     Hinkle's claims are typical of the claims of the Putative Class Members. Hinkle and the Putative Class Members sustained damages arising out of Phillips 66's illegal and uniform employment policy.

67.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

68.     Therefore, this issue does not preclude class or collective action treatment.

### JURY DEMAND

69.  Hinkle demands a trial by jury.

### RELIEF SOUGHT

70.  WHEREFORE, Hinkle prays for judgment against Phillips 66 as follows:

a.   An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.   For an Order pursuant to Section 16(b) of the FLSA finding Phillips 66 liable for unpaid back wages due to Hinkle and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c.   For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d.   For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
**Michael A. Josephson**
Fed. Id. 27157
State Bar No. 24014780
**Richard M. Schreiber**
Fed Id. 705430
State Bar No. 24056278
**Josephson Dunlap, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**